589 S.E.2d 781

The STATE, Respondent,

v.

Anthony Jerome BROWN, Appellant.

No. 3702.

Court of Appeals of South Carolina.

Heard Nov. 4, 2003.

Decided Nov. 24, 2003.

498

Assistant Appellate Defender Eleanor Duffy Cleary, of SC Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Ralph E. Hoisington, of Charleston, for Respondent.

ANDERSON, J.:

Anthony Jerome Brown was convicted of second degree burglary. He was sentenced to life without parole. Brown appeals his conviction asserting the trial court erred in admitting the witness's identification of him. We affirm.

## *FACTS/PROCEDURAL BACKGROUND*

At approximately 2:40 a.m. on January 30, 2001, Rolston Smith was sleeping in his downtown Charleston condominium when he was awakened by the sound of breaking glass. After getting out of bed and putting on his glasses, Smith looked out his second floor bedroom window to see the source of the noise. At the Prescription Pharmacy Center approximately "three car lengths diagonally across the street" from his bedroom window, Smith "saw an individual straddling a bicycle at the front door of the Prescription Center, and this individual was finishing off the breaking of a large window pane to the right of the front door of the Prescription Center." Smith noticed that the individual was a black male wearing a light blue jacket and a black backpack. Smith testified that, while watching the individual reach through the broken window of the Prescription Pharmacy Center, he called 911 and gave a "blow-by-blow account to the operator who received [his] phone call." Smith described to the operator "what [the individual] was wearing, that he was on a bike, that he was headed the wrong way on Rutledge Avenue, the blue coat, the hat, the backpack that he had on." Smith indicated he "thought [the individual] was stealing something from inside the Prescription Center because this white object was being brought from within out ... so that [Smith] thought he was

already in the process of taking things from inside that building."

The Prescription Pharmacy Center's twenty-four hour internal lights and its four external lights across the front of the store cast what Smith described as "certainly ample lighting so that you can see what is going on without any trouble." Regarding additional lighting, Smith stated:

Well, they also have security lights on the right-hand side of the building which illuminate that entire side of the building. And there is an overheard street light just right across on the same side of the street of the Prescription Center which illuminates that intersection. And then we also have security lights on our building so that at the back of our building sort of shining into the street is yet another light source. So there's plenty of light right there at that particular part of Rutledge Avenue.

Smith testified that, while he observed the individual across the street, his degree of attention was "100 percent because I couldn't believe that I was actually seeing this attempted break-in. I could not believe it. I just was stunned. So I was 100 percent focused to it."

As Smith talked to the 911 operator, the individual left the storefront and rode north toward Calhoun Street going the wrong way on Rutledge Avenue. In doing so, the individual biked directly in front of Smith, "as [he] stood [at his] second floor window looking down at him bike by." While watching the individual ride by, Smith conveyed to the 911 operator a description of the individual's attire and direction of travel.

"[W]ithin just a matter of again a few more seconds," the police called Smith back, asking him to make an identification of "an individual that had been found a few blocks over." An officer arrived at Smith's house about two minutes later. The officer drove Smith to the intersection of Vanderhorst and Smith Streets, where the police had detained Brown. When Smith arrived in the patrol car, Brown was standing and facing in Smith's direction. Brown's bicycle was located near where Brown was standing. Smith told the officer that if the individual turned around and was wearing a black backpack, he would recognize him as the perpetrator. As Smith spoke, Brown turned around, revealing a black backpack. Smith

then told the officer that Brown was the man he had seen at the Prescription Pharmacy Center just "two minutes or three minutes prior to that."

Brown was charged with second degree burglary. Prior to trial, Brown moved to suppress the pre-trial identification made by Smith. He claimed the identification procedure was unduly suggestive. He further maintained that, under the totality of the circumstances, the identification was unreliable and, thus, inadmissible. The judge held an *in camera* hearing to determine the admissibility of the identification by Smith.

During the *in camera* hearing, Smith testified that when he made the identification on the night of the crime, he "was 100 percent certain that [he] was seeing the same individual that [he] had just seen breaking—or trying to break into the Prescription Center." When asked if the police said or did anything that would have suggested Brown "as a suspect that would have swayed [his] opinion either way," Smith answered, "[d]efinitely not." On redirect, the Solicitor asked Smith if he was "sure that the man in court today, the man that was stopped that evening at Smith and Vanderhorst is the man that broke into the Prescription Center." Smith responded, "yes," and that there was no "doubt in [his] mind about that."

Officer Steven Jones, with the Charleston Police Department, testified at the hearing. Officer Jones responded to the scene and drove Smith to the intersection of Smith and Vanderhorst Streets to confirm the identity of the person the police had stopped. Officer Jones testified that Smith "confirmed the identity of the person [the police] had stopped as being the same person that he had seen attempting to break into the pharmacy." Officer Jones questioned Smith as to whether "he was certain that this was the person." Smith said "he was absolutely certain." According to Officer Jones, Smith did not hesitate when identifying Brown as the perpetrator.

While driving to the crime scene, Officer Grady Epps observed Brown "going north up Smith Street ... [j]ust minutes" after the "burglary call came over the radio." Officer Epps stopped Brown because he "fit the description that was given out by the witness at the scene."

The judge ruled the pre-trial identification was reliable under the totality of the circumstances. He denied the motion

to suppress the identification. At trial, Smith explained that he based his identification on the fact that Brown "was a black individual, his bicycle, the blue jacket, the black backpack and the fact that he was where I thought he would about be given the amount of time that they had to get over in that neighborhood and look for him." Smith focused on the clothing to "see if in [his] memory what th[e] individual had on matched what [Smith] had just seen at the Prescription Center." He declared the body size of the person found by the police matched the body size of the person he had seen at the Prescription Pharmacy Center. Smith identified Brown as the man he "observed breaking into the Prescription Center."

## ISSUE

Did the trial court err in admitting the witness's identification of Brown?

## STANDARD OF REVIEW

Generally, the decision to admit an eyewitness identification is in the trial judge's discretion and will not be disturbed on appeal absent an abuse of discretion, or the commission of prejudicial legal error. *State v. Moore,* 343 S.C. 282, 540 S.E.2d 445 (2000); *see also State v. Mansfield,* 343 S.C. 66, 538 S.E.2d 257 (Ct.App.2000) (admissibility of evidence is within sound discretion of trial judge; evidentiary rulings of trial court will not be reversed on appeal absent abuse of discretion or commission of legal error which results in prejudice to defendant).

## LAW/ANALYSIS

Brown argues "the trial court erred by failing to suppress Smith's identification of [him] where the identification [procedure] was suggestive and unreliable." We disagree.

A criminal defendant may be deprived of due process of law by an identification procedure that is unnecessarily suggestive and conducive to irreparable mistaken identification. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *State v. Patterson,* 337 S.C. 215, 522 S.E.2d 845 (Ct.App.1999). An in-court identification of an

accused is inadmissible if a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. Cheeseboro*, 346 S.C. 526, 552 S.E.2d 300 (2001).

■ The United States Supreme Court has developed a two-prong inquiry to determine the admissibility of an out-of-court identification. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). First, a court must ascertain whether the identification process was unduly suggestive. *State v. Moore*, 343 S.C. 282, 540 S.E.2d 445 (2000). The court must next decide whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed. *Id.* The *Moore* Court explained:

> Only if [the procedure] was suggestive need the court consider the second question—whether there was a substantial likelihood of irreparable misidentification. Although one-on-one show-ups have been sharply criticized, and are inherently suggestive, the identification need not be excluded as long as under all the circumstances the identification was reliable notwithstanding any suggestive procedure. [The] inquiry, therefore, must focus upon whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification.

*Moore*, 343 S.C. at 287, 540 S.E.2d at 447–48 (quoting *Jefferson v. State*, 206 Ga.App. 544, 425 S.E.2d 915 (1992)) (internal quotations omitted).

■ Identifications resulting from single person show-ups have been upheld by the United States Supreme Court and our Supreme Court. " 'While a showup in which a witness views a single suspect is generally suggestive, and hence suspect or disfavored, and less preferable than a lineup, even if requested by accused, a showup may be proper in some circumstances.' " *State v. Mansfield*, 343 S.C. 66, 78, 538 S.E.2d 257, 263 (Ct.App.2000) (quoting 22A C.J.S. *Criminal Law* § 803 (1989)).

■ " '[A] showup may be proper where it occurs shortly after the alleged crime, near the scene of the crime, as the witness' memory is still fresh, and the suspect has not had time to alter his looks or dispose of evidence, and the showup may expedite the release of innocent suspects, and enable the

police to determine whether to continue searching.'" *Mansfield,* 343 S.C. at 78, 538 S.E.2d at 263. The closer in time and place to the scene of the crime, the less objectionable is a showup. *Id.* A show-up may be proper even though the police refer to the suspect as a suspect, and even though the suspect is handcuffed or is in the presence of the police. *Id.* Although show-ups have been upheld by the Court, these situations usually involve either extenuating circumstances or are very close in time to the crime. *See State v. Hoyte,* 306 S.C. 561, 413 S.E.2d 806 (1992).

Single person show-ups are disfavored because they are suggestive by their nature. *State v. Blassingame,* 338 S.C. 240, 525 S.E.2d 535 (Ct.App.1999). However, an identification may be reliable under the totality of the circumstances even when a suggestive procedure has been used. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Blassingame,* 338 S.C. at 251, 525 S.E.2d at 541. Suggestiveness alone does not mandate the exclusion of evidence. *State v. Stewart,* 275 S.C. 447, 272 S.E.2d 628 (1980); *State v. Patterson,* 337 S.C. 215, 522 S.E.2d 845 (Ct.App.1999). Reliability is the linchpin in determining the admissibility of identification testimony. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Blassingame,* 338 S.C. at 251, 525 S.E.2d at 541.

To determine whether an identification is reliable, it is necessary to consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the amount of time between the crime and the confrontation. *See Mansfield,* 343 S.C. at 78–79, 538 S.E.2d at 263. The corrupting effect of a suggestive identification is to be weighed against these factors. *Id.* at 79, 538 S.E.2d at 263. After the trial court determines the witness's identification is reliable, the witness is permitted to testify before the jury. *Id.*

Notwithstanding the suggestive nature of the identification procedure employed by police in this case, Smith's identification of Brown was reliable in light of the totality of the circumstances. First, insofar as the witness's opportunity to

observe the individual at the time of the crime, Smith testified that his window was about "three car lengths diagonally across the street" from the pharmacy. Further, Smith stated the lighting was sufficient "so that you can see what is going on without any trouble." There were lights inside the pharmacy that stayed on all of the time, four external lights across the front of the store, a street lamp near the pharmacy, and security lights on Smith's building. According to Smith, "there's plenty of light right there at that particular part of Rutledge Avenue." Smith said there were no obstructions blocking his view of the pharmacy. Smith was so stunned that he was "100 percent focused." When leaving the scene, Brown biked directly in front of Smith, as Smith stood at his second floor window looking down at Brown ride by.

While the fact that the initial observation occurred during the night rather than during the day would typically tend to weigh against admission by negatively affecting this factor, when viewed in the totality of the circumstances in conjunction with the exceptionally brief time lapse, it actually supports admission in this case. Unlike daytime when streets are bustling with throngs of persons traveling hither and thither, Smith's identification during the dead of night drastically reduces the likelihood that Smith had mistaken Brown for some other similarly clad nocturnal cyclist.

Second, Smith declared that, while he watched the individual across the street, his degree of attention was "100 percent because [he] couldn't believe that [he] was actually seeing this attempted break-in." Third, Smith was able to give the police a detailed and accurate description of the perpetrator. Smith described to the 911 operator the perpetrator's clothing, the fact that he was riding a bicycle, that he was a black male, that he was headed the wrong way on Rutledge Avenue, and that he was wearing a blue coat and black backpack. Smith's description of Brown was consistent with his appearance.

Fourth, at the confrontation, Smith explicitly stated that he "was 100 percent certain that [he] was seeing the same individual that [he] had just seen breaking—or trying to break into the Prescription Center." Smith informed Officer Jones that "he was absolutely certain" Brown was the perpetrator. According to Officer Jones, Smith did not hesitate when identifying Brown as the perpetrator. Finally, only a few

minutes passed between the time of the crime and the confrontation. When Smith made the identification, he advised the officer that Brown was the man he had seen at the pharmacy just **"two minutes or three minutes prior to that."** Critically, there was only a brief time between the crime and the identification. *See State v. Mansfield,* 343 S.C. 66, 538 S.E.2d 257 (Ct.App.2000).

We hold Smith's pre-trial identification of Brown was reliable under the totality of the circumstances. The identification satisfies the criteria of *State v. Stewart,* 275 S.C. 447, 272 S.E.2d 628 (1980), and *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Brown cites *State v. Moore,* 343 S.C. 282, 540 S.E.2d 445 (2000), as controlling the instant case, thus binding us to likewise find error in the trial court's determination of admissibility. While we agree that *Moore* outlines the governing law in this case, the dissimilar circumstances compel us to conclude that, unlike the identification in *Moore,* Smith's identification of Brown was sufficiently reliable to avoid violating Brown's due process rights.

In *Moore,* the Supreme Court determined the trial court erred in admitting a witness's show-up identification testimony where the witness's descriptions to the 911 operator were based primarily on the suspects' clothing and race, and the fact that one was taller than the other. *Id.* The witness had not seen the individuals' faces. *Id.* The Court noted:

> Of further concern is the fact that Davis failed to recognize Wideman at the scene of the crime, notwithstanding she claimed to have seen the side of his face and knew him from her sister's apartment complex. The fact that Davis failed to recognize him until the show-up highlights both the inherent unreliability of the identification and the completely suggestive nature of the show-up procedure. Further, as to the defendant Moore, Davis gave no physical description of him other than the fact that he was shorter and wore a black hat. She did not recall if he was stocky or thin; she recognized him at the show-up only by virtue of the black hat on the ground beside him.

*Id.* at 289–90, 540 S.E.2d at 449.

The initial observation in the *Moore* case occurred during the middle of the day and the show-up identification followed

90 minutes later. *Id.* In the case *sub judice,* the time between crime and confrontation was brief, only a matter of minutes. The police called Smith to make his identification after "just the briefest time, maybe a minute or a minute and a half." This is not a distinction without meaning. This Court recently held that a "showup may be proper where it occurs shortly after the alleged crime, near the scene of the crime, as the witness' memory is still fresh, and the suspect has not had time to alter his looks or dispose of evidence." *State v. Mansfield,* 343 S.C. 66, 78, 538 S.E.2d 257, 263 (Ct.App.2000). Such is the case at bar. Not only was the crime and identification close in both time and location, but also Brown was apprehended near where Smith projected Brown would be based on his direction and mode of travel. Although it does not fit neatly into one of the enumerated factors, this sort of predictive corroboration lends vast support to reliability.

## *CONCLUSION*

The trial court properly denied Brown's motion to suppress Smith's pre-trial identification of him. Additionally, the judge did not err in allowing the in-court identification. Accordingly, Brown's conviction is

**AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.