THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Dorian J. Cain, Appellant.
 
 
 

Appeal From Lee County
 Clifton Newman, Circuit Court Judge

Unpublished Opinion No.  2006-UP-387
Heard September 14, 2006  Filed November 28, 2006

AFFIRMED

 
 
 
Desa Ballard and Jason B. Buffkin, both of West Columbia; for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,
Senior Assistant Attorney General Norman Mark Rapoport, of Columbia; and Solicitor Cecil Kelly Jackson, of Sumter; for Respondent.
 
 
 

PER CURIAM: A jury convicted Dorian J. Cain of two counts of armed robbery, and the trial court sentenced him to concurrent terms of ten years imprisonment.  On appeal, Cain argues the trial court erred in refusing to suppress the victims identifications, failing to dismiss the case for lack of probable cause, and in failing to grant his motion for a new trial.  We affirm.  
FACTS
On December 18, 2003, at approximately 11:00 a.m., James Reames and Edward Scott (collectively, the victims) were at a work-site moving chairs out of a building that was set to be demolished. Three young men approached and asked if the victims needed help.  When the victims looked up, two of the men, including a man later identified as Cain, pointed guns at them and demanded the victims wallets.  After taking the wallets, the robbers fled.  The entire incident took approximately five minutes.  
The victims drove to a police station and reported the incident about ten minutes after it occurred.  They described the robbers as three young black males . . . one tall with a medium complexion wearing a white t-shirt and two shorter males with darker complexions.  
Officer Ernest Mosely was patrolling nearby when he heard a radio dispatch reporting the robbery and the victims description of the perpetrators.  A few moments later, Officer Mosely observed an automobile driving through an intersection at an unusual rate of speed.  He believed the automobile was traveling too fast for conditions because the street was narrow and the automobile failed to completely stop at a stop sign.  The automobile was within two blocks of the scene of the robbery, and a passenger in the back kept turning around in his seat to watch the officer.  Officer Mosely observed four black males in the car, and in addition to the rear passenger who continued to turn around in his seat, Officer Mosely also noticed that the driver repeatedly looked into the rearview mirror.   
Officer Mosely activated his lights, and the automobile stopped.  At some point before the stop, Officer Mosely observed the rear passenger, later identified as Cain, remove a white t-shirt to reveal a black t-shirt he wore underneath.  The officer then radioed for back up because he believed the people inside the car might have been involved in the robbery.  When the other officers arrived at the scene, they ordered the suspects to exit the car.  The officers frisked and handcuffed the men.[1]   They searched the car for weapons, but found none.       
Soon afterward, police brought the victims to the scene. Both immediately identified Cain as the person who robbed them.  They did not implicate the other men.  
A grand jury indicted Cain on two counts of armed robbery.  On April 6, 2004, the case was tried before a jury.  Prior to opening statements, Cain moved to suppress the identifications of him made by the victims on the basis the show-up identification was unduly suggestive.  The trial court held an in camera hearing on the motion, which it ultimately denied.  During the in camera hearing, Cain also moved to have the case dismissed, arguing Officer Mosely lacked probable cause to stop the car.  The trial court denied the motion.       
The jury found Cain guilty of two counts of armed robbery, and the trial court sentenced him to two concurrent terms of ten years imprisonment.  After trial, Cain filed a motion, pursuant to Rule 29(b), SCRCP, to set aside the verdict based on after-discovered evidence.  The motion was based on an affidavit of Reames that recanted his trial testimony identifying Cain as one of the robbers.  The affidavit provided:

This statement certifies that I am changing my statement back to my original.  I am not sure who robbed us on Dec. 18.  I can not clearly identify Dorian Cain.  I only changed my statement because I was instructed by the police department that Dorian was the suspect.  I could not really identify the suspect because of the dark lighting in the building.  Again I can not state Dorian Cain robbed me and I am willingly changing my statement.  

During the hearing on Cains motion, Reames testified he could not read or write very well, and he denied writing the recantation.  He admitted signing the affidavit, but stated he believed the document only changed a court date.     Reames testified he still believed Cain robbed him and denied making any statement to the contrary.  In contrast, Juanita Robinson testified that she and Cains sister read the affidavit to Reames before they went to the courthouse to have the document notarized.  
The trial court found Cain cross-examined Reames on the issue of whether he was sure Cain was one of the robbers.  Further, the trial court found that recantation testimony is inherently unreliable and, in any case, Reames denied making the statement in the affidavit.  Accordingly, the trial court denied the motion.  This appeal followed.
LAW/ANALYSIS
I.       Motion to Suppress 
Cain argues the trial court erred by failing to suppress the victims out of court identification of him.  He contends the show-up identification procedure was impermissibly suggestive, and therefore the identification of him was unreliable.  Although we agree the show-up might have been suggestive, we find under the totality of the circumstances that the identification of Cain was nonetheless reliable. 
A criminal defendant may be deprived of due process of law by an identification procedure which is unnecessarily suggestive and conducive to irreparable mistaken identification.  State v. Moore, 343 S.C. 282, 286, 540 S.E.2d 445, 448 (2000) (citing Stovall v. Denno, 388 U.S. 293 (1967)).  A confrontation which is suggestive is disapproved of because of the increased likelihood of misidentification; however, suggestiveness in and of itself does not mandate the exclusion of evidence.  State v. Tisdale, 338 S.C. 607, 612, 527 S.E.2d 389, 392 (2000) (citing Neil v. Biggers, 409 U.S. 188, 198 (1972)).  The key factor in deciding whether identification testimony is admissible is reliability.  Manson v. Brathwaite, 432 U.S. 98, 114 (1977).  
To determine whether an out-of-court identification is sufficiently reliable to warrant admission, South Carolina employs the two-prong inquiry developed by the United States Supreme Court in Neil v. Biggers.  409 U.S. at 199-201.  The first prong considers whether the identification process was unduly suggestive.  State v. Brown, 356 S.C. 496, 503, 589 S.E.2d 781, 784, (Ct. App. 2003).  If the identification procedure is deemed suggestive, we then consider the second prong of the analysis: whether a substantial likelihood of irreparable misidentification occurred.  Moore, 343 S.C. at 287, 540 S.E.2d at 447-48.  Although one-on-one show ups have been sharply criticized, and are inherently suggestive, the identification need not be excluded as long as under the circumstances the identification was reliable despite the suggestive procedure.  Id. at 287, 540 S.E.2d at 448 (finding show-up procedure unduly suggestive where witness was brought to a location where two individuals wearing similar clothing to that described by the witness were surrounded by uniformed police).  Therefore, the overarching inquiry is whether under the totality of circumstances a substantial likelihood of irreparable misidentification exists.  Id. 
In assessing the first part of our inquiry, we find the trial court erred in ruling the show-up procedure was not unduly suggestive.  An officer brought the two witnesses to a location where four young men stood handcuffed amidst uniformed police officers.  Because the officer took the witnesses to a location that included suspects only, the show up procedure was suggestive.  See id. at 287-288, 540 S.E.2d at 448 (citing In the Interest of Jamal Rashee A., 308 S.C. 392, 418 S.E.2d 326 (Ct. App. 1992) ( finding taking witness to location where suspects, but no other individuals, are being detained is suggestive)).
Despite finding the show-up procedure suggestive, we can still uphold the admission of the identification testimony if, under the totality of the circumstances, the identification is deemed reliable and the opportunity for misidentification is slight.  The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witnesss degree of attention, the accuracy of the witnesss prior description of the criminal, the level of certainty displayed by the witness at the confrontation, and the length of time between the crime and the confrontation.  State v. Blassingame, 338 S.C. 240, 252, 525 S.E.2d 535, 541 (Ct. App. 1999) (citations omitted).  
Applying these factors to the present case, we find the witnesses identification testimony reliable.  The robbery occurred at 11:00 a.m. in a well-illuminated building.  There, both victims saw Cain for at least five minutes.  The robber was not wearing any sort of disguise, and both witnesses testified to looking at Cains face primarily because he had a gun.  Moreover, as a barber, Scott testified he was trained to notice everything about a mans face or head and accordingly, paid particular attention to Cain.  Both witnesses testified to being afraid, and presumably paid closer attention because they were fearful for their lives.  Id. at 252, 252 S.E.2d at 541-542 (A person in fear of his life presumably has a more acute degree of attention to his surroundings than a mere passerby.).  Finally, the witnesses each testified they had seen Cain in the neighborhood before and were actually able to recognize his face, not just remember a face unfamiliar to them.  
Further, Cain also fit the descriptions given by the witnesses, both of whom immediately identified him as one of the robbers.  Additionally, only thirty minutes elapsed from the time the witnesses reported the robbery until they identified Cain as one of the robbers.  Shortly after the crime occurred, the police apprehended Cain near the crime scene.  Accordingly, the trial court did not err in denying Cains motion to suppress the witnesses pre-trial identification of him.  
II.      Probable Cause
Cain argues the trial court erred by denying his motion to dismiss because there was neither probable cause to justify the stop[2] nor reasonable suspicion to seize the passengers after the stop.   We disagree.
 The decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation has occurred. State v. Woodruff,  344 S.C. 537, 546, 544 S.E.2d 290, 295 (Ct. App. 2001) (citing Whren v. United States, 517 U.S. 806 (1996)).  Further, [a] police officer may stop and briefly detain and question a person for investigative purposes, without treading upon his Fourth Amendment rights, when the officer has a reasonable suspicion supported by articulable facts, short of probable cause for arrest, that the person is involved in criminal activity.  Id., 344 S.C. at 546, 544 S.E.2d at 295 (citing United States v. Cortez, 449 U.S. 411 (1981)). In determining whether a stop based upon reasonable suspicion violated the Fourth Amendment, the trial court must consider the totality of the circumstances before the officer and whether these circumstances raise a suspicion that the particular individual being stopped is engaged in criminal activity.  State v. Alexander, 309 S.C. 495, 498, 424 S.E.2d 526, 528-29 (1992) (citing United States v. Cortez, 499 U.S. 411 (1981)).  
In the present case, Officer Mosely learned a robbery had recently occurred and immediately proceeded to the scene.  He had just exited his police vehicle to interview people in the area when he first observed the automobile.  The automobile had four men in it and was traveling too fast for the particular area.  Further, Officer Mosely testified the automobile did not completely stop at a stop sign.  Additionally, the driver continuously looked back at him instead of observing where he was going.  Officer Mosely activated his blue lights and radioed for back up because he believed the persons inside may be involved with the crime.  He noticed Cain, in the backseat, kept moving and appeared to put on a different T-shirt.  
From this testimony, there is evidence to support the trial courts conclusion that Officer Mosely had probable cause to stop the vehicle because of the traffic violations the driver committed.  Further, Officer Mosely could briefly detain the occupants in the vehicle because he had reasonable suspicion that they were involved in criminal activity: the automobile was within two blocks of where the robbery occurred and both the driver and a rear-seat passenger repeatedly looked back at Officer Mosely.  See Alexander, 309 S.C. at 498-99, 424 S.E.2d at 529 (finding officer had reasonable basis to suspect automobile passengers were engaged in criminal activity because automobile was in a high crime area, had out-of-state tags, and passenger kept turning around to watch the police vehicle).  Officer Moselys suspicions were further aroused when Cain took off his white T-shirt.  Accordingly, after examining the totality of the circumstances, we find evidence to support the trial judges refusal to dismiss the case because Officer Mosely had both probable cause to initiate the stop and a reasonable suspicion to detain the passengers.       
III.    New Trial
Finally, Cain argues the trial court erred in denying his motion for a new trial based upon after discovered evidence.   We disagree.
For a defendant to prevail on a motion for a new trial based on after discovered evidence, he must show the evidence (1) is such as will probably change the result if a new trial is granted; (2) the evidence has been discovered after the trial has ended; (3) the evidence could not have been discovered by the use of due diligence; (4) the evidence is material; and (5) the evidence is not cumulative or impeaching.  State v. Needs, 333 S.C. 134, 157-58, 508 S.E.2d 857, 869 (1998) (citing State v. Prince, 316 S.C. 57, 447 S.E.2d 177 (1993)).  Further, the granting of such a motion is not favored and, absent error of law or abuse of discretion, this court will not disturb the trial courts denial of a motion for a new trial.  Id.  (citations omitted).
Here, the asserted after-discovered evidence is an affidavit signed by Reames purportedly disavowing his statement at trial identifying Cain as one of the men who robbed him.  However, Reames later testified that he did not recant his prior testimony and continued to identify Cain as the robber.   
The South Carolina Supreme Court has previously held recantation of testimony ordinarily is unreliable and should be subjected to the closest scrutiny when offered as ground for a new trial.  State v. Porter, 269 S.C. 618, 621, 239 S.E.2d 641, 643 (1977).  In this case, we are presented with conflicting evidence: an affidavit recanting statements made during trial and the testimony of the affiant during the hearing in which he denied the content of the affidavit.  When issues of credibility arise, the trial court, not this court, has the discretion to weigh the evidence.  See State v. Parker, 249 S.C. 139, 141, 153 S.E.2d 183, 184 (1967) (It is a fixed rule that the credibility of newly-discovered evidence offered in support of a motion for a new trial is a matter for determination by the [trial court] . . . [the trial court] not this court [has] the power to weigh such evidence.).  Further, by denying the content of the affidavit, Reames essentially left Cain without any ground for the new trial because at best, the affidavit could only be used to impeach Reames trial testimony.  See Needs, 333 S.C. at 157-158, 508 S.E.2d at 869 (finding a ground for a new trial may not be based upon evidence that is merely cumulative or impeaching).  Accordingly, we find the trial court properly denied Cains new trial motion.
Moreover, even if Reames had not disavowed the affidavit and recanted his trial testimony, Cain failed to establish the after-discovered evidence would have changed the outcome of the trial.  See id., 333 S.C. at 158, 508 S.E.2d at 869 ([Although] the States case against appellant was not overwhelming, especially since the States key witness had offered so many contradictory statements . . . we do not believe the evidence appellant would present at a new trial would change the outcome of the trial.).  The other victim, James Scott also identified Cain as one of the robbers.  Furthermore, the State presented evidence that a police officer saw Cain in close proximity to the scene of the robbery just before it occurred.  Officer Mosely testified that he apprehended Cain shortly after the crime.   Here, even without Reames testimony, we find the State presented ample evidence from which the jury could find Cain guilty.  Accordingly, Cain has not met his burden in showing how the after-discovered evidence would have changed the outcome of trial.  
CONCLUSION
For the foregoing reasons, the trial court properly denied Cains motion to suppress the victims pre-trial identification of him.  Further, the trial court did not err in finding probable cause existed to initiate the stop.  Lastly, the trial court did not err by failing to grant Cains motion for a new trial based on after-discovered evidence.  Accordingly, Cains conviction is
 AFFIRMED.
HEARN, C.J., and HUFF and STILWELL, JJ., concur.

[1] There is some dispute in the record whether the police handcuffed all the occupants in the car or just Cain.  Mr. Reames testified in camera that Cain was the only one in handcuffs.  The officers at the scene, however, testified that all the suspects were handcuffed.  
[2] Although we assume for purposes of this opinion that Cain had standing, we need not decide the issue because we find the officers stop of the vehicle was justified in any event.   See Whiteside v. Cherokee County Sch. Dist. One, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (explaining the appellate court need not address an issue already resolved by other means).