THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 
 
 

v.

 
 
 
 Curtis Scott, Appellant.
 
 
 

Appeal From Jasper County
 Jackson V. Gregory, Circuit Court Judge
Unpublished Opinion No. 2008-UP-067
Submitted December 1, 2007  Filed January
 23, 2008    
AFFIRMED

 
 
 
 Appellate Defender Eleanor Duffy Cleary, of Columbia, for
 Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Harold M. Coombs,
 Jr., Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia;
 and Solicitor I. McDuffie Stone, III, of Beaufort, for Respondent.
 
 
 

PER CURIAM:  Curtis Scott was convicted of
 attempted armed robbery and sentenced to thirteen years in prison.  He appeals,
 arguing the trial court erred in admitting the in-court identifications of him
 because they were based upon an unduly suggestive pretrial identification
 procedure and were not otherwise reliable.  We affirm.[1]   
I.
Scott was charged with attempting to rob Miguel Leyva
 of his wallet in the parking lot of a Food Lion in Ridgeland, South Carolina. 
 Both Leyva and Shawnricka Burrison, a store employee who observed the incident,
 picked Scott out of a photographic lineup shortly after the incident, and they
 again identified Scott at trial as the perpetrator.  
Prior
 to trial, Scott made a motion to exclude the identifications of the two
 eyewitnesses.  During the in limine hearing on the motion, Leyva, who speaks
 little English, testified through an interpreter that a man approached him in
 the parking lot and asked him for a cigarette, and he told the man he didnt
 smoke.  The man then got inside Leyvas car, pulled a gun on him, and asked for
 his wallet.  Leyva opened the car door, hit the man with his arm, and then ran
 towards the Food Lion while calling 9-1-1 on his cell phone.  Burrison
 testified that she had walked outside the store on her break when she observed
 the conflict between Leyva and the other man.  She stated the perpetrator was
 wearing a red jersey shirt and blue jeans and appeared to be harassing the victim. 
 Burrison stated once the victim appeared to be attracting attention, the
 perpetrator shoved something into the waistband of his pants and then ran
 behind the store.  Burrison advised her store manager about the problem and the
 manager called the police.  Burrison stated she had seen the perpetrator before
 because he had come into the store on prior occasions, but she did not know his
 name.  
The police prepared
 two photo lineups.  The first lineup, prepared shortly after the incident,
 consisted of photos of people the police thought were likely to have committed
 the crime.  Scotts photo was not included in the first lineup.  A few days
 later, after receiving several tips, the police presented seven photos in a
 stack to Leyva and Burrison and each positively identified Scott as the
 perpetrator.  The officer who presented the photos, Michael Ballenski,
 testified that he did not suggest anything to the witnesses when they viewed
 the photos and simply handed them the stack of photos and asked if the person
 who had attempted the robbery was in any of the photos.  He stated Burrison
 immediately identified Scott as the person she saw at the store.  Burrison
 signed the back of the photo to indicate she had identified Scott.  The officer
 stated Leyva was then shown the photos.  Burrison was not present.  Once Leyva
 identified Scott as the person who had attempted to rob him, the photo was then
 turned over for Leyva to sign.  The officer explained that the witnesses were
 not together when the identifications were made, and Leyva could not see
 Burrisons identification before he made his own identification of Scott. 
 
At the in limine
 hearing, Burrison testified that she was handed a stack of photos and they were
 not in any particular order.  Burrison stated she looked at all of them and
 recognized Scott as the robber.  Burrison stated the officer stood back while
 she looked at the photos so she could not ask him any questions.  Burrison
 stated there was nothing about any of the photographs that focused particular
 attention on any of them and that she reviewed them all the same.  She stated
 her identification was based on what she had seen during the incident.    
Leyva testified
 through an interpreter and stated when he saw the second set of photos the
 officer stated only, Im bringing you a couple of more pictures to see if you
 can identify the person that did whatever happened.  When asked if there was
 anything said or done to make one photo any more or less special, Leyva stated
 [t]hey were all normal pictures.  Leyva said he recognized Scott in the
 second set of photographs and after he identified Scott, the officer then told
 him he needed to sign the back of the photo.  Leyva stated he did not see the
 back of the photo prior to turning it over to sign it.  
The trial judge,
 while noting the police could have done some things better, found as a fact
 that under . . . all the circumstances of this case . . . this identification
 by both witnesses was reliable and ruled that their testimony as to identity
 would be admissible at trial.  Scott was subsequently convicted as charged.
II.
On appeal, Scott contends the trial judge erred in
 admitting the in-court identifications of him because they were based upon an
 unduly suggestive pretrial identification procedure and the identifications
 were not otherwise reliable under Neil v. Biggers, 409 U.S. 188 (1972).
The
 United States Supreme Court has developed a two-prong inquiry [in Neil v.
 Biggers] to determine the admissibility of an out-of-court identification.  State v. Brown, 356 S.C. 496, 503, 589 S.E.2d 781, 784 (Ct.
 App. 2003).  First, a court must ascertain whether the identification process
 was unduly suggestive.  Id.  The court must next decide whether the
 out-of-court identification was nevertheless so reliable that no substantial
 likelihood of misidentification existed.  Id.
 Even assuming an identification procedure is suggestive, it need not be excluded so long as, under all the
 circumstances, the identification was reliable notwithstanding the suggestiveness.  State v. Traylor, 360
 S.C. 74, 82, 600 S.E.2d 523, 527 (2004).  The inquiry must focus upon
 whether, under the totality of the circumstances, there was a substantial
 likelihood of irreparable misidentification.  Id.  The following
 factors should be considered in evaluating the totality of the circumstances to
 determine the likelihood of a misidentification:  (1) the witnesss opportunity
 to view the perpetrator at the time of the crime, (2) the witnesss degree of
 attention, (3) the accuracy of the witnesss prior description of the
 perpetrator, (4) the level of certainty demonstrated by the witness at the
 confrontation, and (5) the length of time between the crime and the
 confrontation.  Id.
Generally,
 the decision to admit an eyewitness identification is in the trial judges
 discretion and will not be disturbed on appeal absent an abuse of discretion,
 or the commission of prejudicial legal error.  Brown, 356 S.C. at
 502, 589 S.E.2d at 784.
Scott argues the
 photos were unduly suggestive because Scott was the only person in the photos
 wearing a white undershirt, was the only one who[se] photo was vertically
 oriented, was the only one in front of a bulletin board that read Secure at
 all time, was in the only photo without a computer-generated name printed on
 his photo, and was depicted in the largest photograph.  Scott also contends the
 paper is lightweight so Burrisons signature could easily be seen by Leyva,
 influencing his choice.  Finally, Scott contends Burrison knew of two of the
 people in the photo lineup and that three of them shared her same last name.    
After reviewing the
 photo lineup, it appears the trial judge properly exercised his discretion in
 ruling the identifications were admissible.  Scotts arguments, while numerous,
 are ultimately without merit.  The photos are all on plain paper that is 8½ by
 11 inches, one sheet for each suspect, and each sheet has two photos of that
 suspect, a front view and a side view.  Although Scotts photos are oriented in
 a different direction on the page from the majority, another suspects photos
 also are oriented differently from the others and there is a double border
 around the photos, so there is nothing remarkable about Scotts photos.  As
 noted by both witnesses, Scotts photos appear to be normal and nothing makes
 his stand out from the others.  
Further,
 contrary to Scotts argument, his photo is not larger than all of the others. 
 Rather, it is the same size as at least one other suspect, and there is not
 much difference between the sizes, in any event.  Moreover, his is not the only
 photo that does not have a name on it.  Scott is wearing a white undershirt,
 that is true, but all of the other individuals except one are wearing a white
 undershirt with another T-shirt over it.  In fact, one individual is wearing a
 red T-shirt, the same color as the perpetrator.  The bulletin board Scott
 refers to is so blurry as to be unreadable, and the wording he references is,
 for the most part, obscured behind Scotts head and does not actually appear in
 full on the photo as he alleges.  As to the signatures, the only evidence in
 the record is that Leyva was not present when Burrison made her identification
 and he did not see Burrisons identification before making his own identification
 of Scott.  
The
 only arguable issue with the lineup appears to be the fact that people with the
 same last name as one of the witnesses appeared in the lineup.  There are
 photos of a Marcus Burrison, a Nathaniel Burrison, and a Gil Nathaniel Burrison. 
 Burrison stated she was not related to Marcus Burrison and she knew of the
 others.  (It is unclear from the record whether the last two might even be the
 same person as the names and photos are similar and Scott notes in his brief
 that Nathaniel Burrison and Gil Nathaniel Burrison appear to be the same
 person.)  However, while the lineup could arguably be deemed suggestive, we
 hold it is not unduly suggestive, which is the applicable standard.  See State v. Turner, 373 S.C. 121, 644 S.E.2d 693 (2007) (stating the fact
 that a suspects photo is in color and the others are in black and white or that
 the suspects photo is larger or in a different position on the page is not
 unduly suggestive; the court noted the trial judges observation that there
 will always be differences found in photos); State v. Govan, 372
 S.C. 552, 643 S.E.2d 92 (Ct. App. 2007) (stating although the showup
 identification procedure in that case was suggestive, it was not unduly
 suggestive under the test articulated in Neil v. Biggers). 
Moreover,
 even assuming the photos are unduly suggestive, however, the inquiry then
 focuses on whether, under the totality of the circumstances, they were
 nevertheless reliable.  It is evident from the testimony of the witnesses that
 they each had ample opportunity to view Scott, Burrison had even seen him at
 the store before, and they were uniformly certain in their identifications. 
 The incident occurred at close range in broad daylight, and both Leyva and
 Burrison were focused on the acts of the perpetrator.  The officer stated
 Burrison immediately identified Scott after viewing the photos, and there is
 no evidence that Leyva was influenced in his selection of Scott.  As noted by
 the trial judge, the officers certainly could have done some things differently
 in preparing the photo lineup, but in looking at the totality of the
 circumstances there is not a very substantial likelihood of misidentification
 in this case.  Accordingly, the trial court did not abuse its discretion in
 admitting the identifications of Scott.
III.
Scotts conviction and sentence are,
 therefore,
AFFIRMED.
HEARN, C.J., and KITTREDGE and THOMAS, JJ., concur.

[1]  We decide this case without oral argument pursuant
 to Rule 215, SCACR.